UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FRANKLIN WHITE,<br><br>      Plaintiff,<br><br>   v.<br><br>ALCON FILM FUND, LLC,<br>ALCON ENTERTAINMENT, LLC,<br>CUBE VISION, INC., WARNER<br>BROS. PICTURES, AND TIME<br>WARNER, INC.,<br><br>      Defendants. | Civil Action No. 1:13-CV-1163-TCB |

## BRIEF OF DEFENDANTS ALCON FILM FUND, LLC, ALCON ENTERTAINMENT, LLC, CUBE VISION, INC., WARNER BROS. PICTURES, AND TIME WARNER INC. IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION.

Plaintiff Franklin White's ("Plaintiff") only remaining cause of action for copyright infringement is entirely meritless. As this Court aptly noted, this case involves "the tale of two Whites" --- Plaintiff, who is the author of the book *First*

1

*Round Lottery Pick"* (the "Book")[1] and non-party Erik White, who created the story for, and directed the motion picture "*Lottery Ticket*" (the "Picture").[2] [3]  Just as that similarity is of no legal consequence, none of the purported similarities alleged by Plaintiff are sufficient to give rise to any liability for copyright infringement.  Indeed, the Court need only read the Book and watch the Picture to conclude that no reasonable jury could possibly find that the two works are substantially similar.

No doubt recognizing that the two works are substantially *dissimilar*, Plaintiff and his expert have attempted to cull out a laundry list of random, strained and highly generalized points of correspondence.[4]  However, these so-called "similarities" involve only mischaracterizations and noncopyrightable elements such as broad ideas, "stock" characters, *scenes-a-faire* and common themes.

---

[1]      The Book is being filed pursuant to a Notice of Manual Filing and is identified herein and in Defendants' Statement of Undisputed Material Facts ("SUMF") as Exhibit "A".

[2]      An original DVD of the Picture is being filed concurrently herewith pursuant to a Notice of Manual Filing and is identified herein and the SUMF as Exhibit "B".

[3]      Order on Motion to Transfer, entered July 9, 2013, pg. 1.

[4]      For the Court's convenience, true and correct copies of a comparison chart prepared by Plaintiff and his expert (which was authenticated during Plaintiff's deposition [Plaintiff's Deposition ("Plt's Depo.") 172:18-23] and Plaintiff's expert's report (which was attached to Plaintiff's Second Amended Complaint) are attached hereto as Exhibits "C" and "D," respectively.

Accordingly, summary judgment should be granted as there is no genuine issue of material fact as to the lack of substantial similarity, which is an essential element of Plaintiff's only remaining claim for copyright infringement.

## II.   STATEMENT OF RELEVANT FACTS

### A. Creation of the Works

Plaintiff's copyright infringement claim is based on his paperback version of the Book, which was published in 2010.  (SUMF ¶3; Plt's Depo., 66:10-13).[5] Plaintiff contends that he sent a pre-publication copy of the Book to Defendant Cube Vision, Inc. in 2009.  (SUMF ¶7; Plt's Depo., 104:3-17; 107:11-108:6; Second Amended Complaint ("SAC") ¶8).[6]

Erik White first conceived of the concept and story for the Picture in 1997. The basis for the story was his own childhood growing up in the Brooklyn, New York public housing projects. (SUMF ¶4; Deposition of Erik White, 21:12-23:2).[7]

---

[5]     Excerpts of Plaintiff's deposition transcript are attached hereto as Exhibit "E". The full condensed version is being submitted concurrently with the Notice of Filing Discovery.

[6]      While Defendants dispute having ever seen, read or heard of the Book, for purposes of this motion only, Defendants have elected not to move for summary judgment on the lack of access by Defendants to Plaintiff's Book, validity of Plaintiff's copyright, or independent creation by Defendants at this time.

[7]     Excerpts of Erik White's deposition transcript are attached hereto as Exhibit "F". The full condensed version is being submitted concurrently with the Notice of Filing Discovery.

In or about 2005, Abdul Williams was asked to draft the screenplay for the Picture. (SUMF ¶5; Declaration of Abdul Williams ("Williams Decl."), ¶3).[8]  As described below, the vast majority of Plaintiff's alleged points of correspondence appear in a draft screenplay for the Picture which *predates* Plaintiff's disputed submission of a pre-publication version of the Book to Defendant Cube Vision, Inc. by at least eight months.  (SUMF, *passim*).  The Picture was released in 2010.  (SUMF ¶8; Williams Decl., ¶6).

### B. Detailed Summary of the Works

#### i. The Book

The Book is an urban crime drama about Langston Holiday ("Langston"), a young kid from "the projects", who gets the opportunity to play professional basketball.  (SUMF ¶11; Book, at p. 1, 5).  Born and raised by a single mother in "Pointdexter Villiage", nicknamed "The Vil", a housing project riddled with poverty, violence and drugs, Langston spent his time as a youth on the basketball court.  (SUMF ¶12; Book, at p. 1-2, 8).

The Book begins with Langston, a high school senior on the verge of graduating, getting the opportunity to play professional basketball for Spain in the European Basketball League.  (SUMF ¶13, Book at p. 11). Langston shares the

---

[8]     The Declaration of Abdul Williams and the attachment thereto are attached hereto as Exhibit "G".

exciting news with his best friend Jalen ("Jalen"), to whom he offers the opportunity to manage his personal affairs, and his girlfriend Tori, who soon thereafter becomes his fiancé ("Tori").  (SUMF ¶14; Book, at p. 6, 37-38, 41).  Toy, a sleazy and marginally successful "old-timer" from The Vil who never made it as a basketball star himself, and with whom Jalen has constant friction ("Toy"), is determined to be Langston's agent.  (SUMF ¶15; Book, at p. 9).

Langston's life is forever changed when Tori suddenly goes missing. (SUMF ¶16; Book, at p. 58)  Toy reveals that he knows where Tori is and will disclose her location to Langston if he agrees hire Toy to serve as his agent under a three-year contract, which he proceeds to do.  (SUMF ¶17; Book, at p. 65-66).

Meanwhile, Toy has arranged for Langston to enter into a $17 Million endorsement deal with a sneaker company.  (SUMF ¶18; Book, at p. 79). Langston shares his newfound wealth by buying his mother a new home and giving Jalen an advance on his salary.  (SUMF ¶19; Book, at p. 92, 106).  However, soon thereafter, Tori reveals to Langston that she is pregnant as a result of being gang-raped.  (SUMF ¶20; Book, at p. 77, 94).  Tori breaks up with Langston when she discovers that Langston has continued his involvement with Katrina, a promiscuous girl with whom Langston has had an on-going sexual relationship. (SUMF ¶21; Book, at p. 121-122).  Langston eventually attempts to reconcile with

Tori, and the on-going rivalry between Toy and Jalen escalates.  (SUMF ¶22; Book, at p. 122, 137).

Thereafter, Langston learns that Jalen has been badly beaten and has had his left leg and his right arm cut off.  (SUMF ¶23; Book, at p. 148).  Jalen reveals to Langston that Toy was responsible for mutilating him and for raping Tori.  (SUMF ¶24; Book, at p. 149).  Before Langston is able to confront Toy, Jalen dies. (SUMF ¶25; Book, at p. 152).  Jalen's death brings Langston and Tori back together, and they decide to raise her child together and name him "Jalen." (SUMF ¶26; Book, at p. 156).  Langston and Tori dedicate a new basketball court to the kids of the The Vil and urge them to consider it a place of fun without violence.  (SUMF ¶27; Book, at p. 160).  Langston then arranges a meeting with Toy where he puts a gun to Toy's head.  Ultimately, however, it is Katrina who emerges from the shadows, bloody, swollen and revealing that she has been raped as well, who shoots and kills Toy.   (SUMF ¶28; Book, at p. 163-164).

### ii.  The Picture

The Picture is a light-hearted and comedic story about Kevin Carson ("Kevin"), a recent high school graduate living in a housing project, who wins a $370 Million lottery jackpot and has to survive the long Fourth of July weekend before he can cash in his winning ticket.  (SUMF ¶29; Picture, *passim*).  The

Picture opens with Kevin getting ready to go to work at the Foot Locker.  (SUMF ¶30; Picture, at 0:30-1:12; 4:13-5:14).  Kevin, his best friend, Benny ("Benny"), and their friend, Stacie ("Stacie") walk through the housing project, encountering a variable cast of characters, including Nikki, a beautiful and unattainable girl who will not give Kevin the "time of day." (SUMF ¶31; Picture, at 6:38-12:46).

While Kevin is at work, Lorenzo, the neighborhood bully, and his friends show up and attempt to steal several pairs of sneakers and are arrested.  (SUMF ¶32; Picture, at 17:02-19:50).  Kevin then meets Stacie at the mall food court for lunch, where he is upset because he has just been fired.  He opens a fortune cookie that says: "Many a false step is made by standing still."  (SUMF ¶33; Picture, at 19:50-19:54).  Kevin then walks home, stopping at the crowded neighborhood liquor store where he decides to buy a lottery ticket for himself, using the numbers from the back of his fortune cookie.  (¶SUMF 34; Picture, at 21:16-21:31).

Kevin wakes up the next morning to learn that he has won the jackpot.  (SUMF ¶35; Picture, at 24:22-26:05).  However, he is unable to claim his winnings because the lottery ticket office is closed until Tuesday morning due to the long holiday weekend.  (SUMF ¶36; Picture, at 30:34-30:52).  By the time Kevin returns home, his grandmother has already broadcast the good news, and the whole neighborhood gathers around Kevin, including Nikki, who now suddenly seems to

be very interested in him.   (SUMF ¶37; Picture, at 32:27-33:15; 38:26-39:40).

Since Kevin's friends insist that he take Nikki to a fancy restaurant, and he has not yet cashed in his winning ticket, he gets a $100,000 loan from Sweet Tee, nicknamed the "Godfather of the Projects", and goes on a shopping spree with his friends.  (SUMF ¶38; Picture, at 42:25-45:26).  Kevin later ends up at Nikki's house, but learns that she is solely interested in him for his newfound money.  (SUMF ¶39; Picture, at 50:20-51:50).  On his way home, Kevin is invited into the house of neighborhood recluse, Mr. Washington, for the first time, where Mr. Washington mentors him on the importance of giving back to the community.  (SUMF ¶40; Picture, at 51:59-57:57).

The next day, Lorenzo chases Kevin around the city.  (SUMF ¶41; Picture, at 1:02:23-1:05-55).  Feeling exploited, Kevin irrationally suspects Benny of trying to steal his ticket.  (SUMF ¶42; Picture, at 1:07:03-1:08-48).  Kevin then goes to Stacie's house, where their relationship turns romantic.  (SUMF ¶43; Picture, at 1:09:09-1:12:58).  As Kevin leaves Stacie's house, Lorenzo knocks him out and steals the lottery ticket.  (SUMF ¶44; Picture, at 1:13:45-1:14:00).

Kevin and Benny reconcile, and Kevin comes up with a plan to get his lottery ticket back.  (SUMF ¶45; Picture, at 1:18:10-1:23:04).  Ultimately, at the neighborhood Fourth of July barbeque, Mr. Washington, a former boxer, knocks

Lorenzo out and returns the lottery ticket to Kevin, and enables Kevin to cash it in. (SUMF ¶46; Picture, at 1:29:15-1:30:20).

The Picture then fast-forwards three months, revealing that Kevin now has a company called the "Carson Foundation" which funds local businesses, grants scholarships and helps to change people's lives.  Kevin donates a park to the community and then flies off in a helicopter with Benny and Stacie.  (SUMF ¶47; Picture, at 1:31:22-1:34:27).

## III.   ARGUMENT.

### A. Legal Standards for Summary Judgment Based on Lack of Substantial Similarity.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is properly granted when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).   Where there is insufficient evidence to establish an "essential element" of a claim on which the plaintiff bears the burden of proof, summary judgment should be granted for the defendant as a matter of law.  *Celetox Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986).  "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Beal v. Paramount Pictures Corporation,* 20 F.3d 454, 459 (11th Cir. 1994), *citing Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

These rules apply equally to claims for copyright infringement.  A court may grant summary judgment for a defendant if *either* "no reasonable jury upon proper instruction would find that the two works are substantially similar" *or* "the similarity between the works concerns only noncopyrightable elements." *Beal, supra,* 20 F.3d at 459, *citing to Warner Bros., Inc. v. American Broadcasting Cos.,* 720 F.2d 231, 240 (2nd Cir. 1983).  Indeed, summary judgment is routinely granted in favor of defendants on the lack of substantial similarity.  *See e.g. Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1257-1263 (11th Cir. 1999); *Funky Films, Inc.,* 462 F.3d 1072, 1076-82 (9th Cir. 2006); *Walker v. Time Life Films*, 784 F. 2d 44, 48-52 (2nd Cir. 1986).

### B. <u>No Reasonable Jury Could Find that the Two Works are Substantially Similar</u>

To determine whether two works are substantially similar, courts in the Eleventh Circuit have examined various aspects of the works in question, such as plot, mood, characterization, pace, setting, and to the extent that they do not overlap with the other elements, sequence of events, dialogue and theme.[9]  *Beal, supra,* 20 F.3d at 460, 464-465.

---

[9]     Defendants have not separately addressed the utter lack of similarity in the sequence of events and themes of the two works, as the analysis of these factors is subsumed into the remaining factors.  For example, as shown in Section II, *supra*, the sequence of events and themes are completely different.

Here, merely reading the Book and watching the Picture reveals that the two works diverge sharply in each of these categories.  Indeed, other than the generalized concept of young African American men growing up in the projects who attain wealth, the works are substantially different.  Such a generalized concept is not entitled to copyright protection.  *Beal*, *supra,* 20 F.3d at 460 ("[G]eneralized themes are in the realm of ideas, which are not protected by copyright."); *Berkic v. Crichton,* 761 F.2d 1289, 1293 (9th Cir. 1985) ("General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind.").  The differences in expression in each of the works are so considerable, that no reasonable jury could conceivably find that these two works are substantially similar.[10]  *Beal*, *supra,* 20 F.3d at 459.

## 1.  Plot

The plots of the Book and Picture differ significantly.  The Book is about a young man living in a housing project, who achieves his lifelong dream of becoming a professional basketball player, only to have his life nearly fall apart after his fiancé is gang-raped, he is blackmailed into signing with an agent, and his best friend is mutilated and murdered.  (SUMF ¶48; Book, *passim*).  In stark

---

[10]    In addition, the plot, mood, characterization, pace, setting, and theme were written *before* Plaintiff alleges he submitted a pre-publication copy of the Book to one of the Defendants.  (SUMF ¶¶ 50, 54, 60, 62, 64).

contrast, the Picture is about a young man living in a housing project, who wins the $370 million lottery jackpot, but must first survive a three-day holiday weekend amongst his opportunistic neighbors, after they find out that he is holding the winning ticket.  (SUMF ¶49; Picture, *passim*; Plt's Depo., 145:21-25).[11]

### 2. Mood

Another glaring dissimilarity between the Book and the Picture is the strikingly different moods of each work. The Book is dark, depressing and dramatic, and features such heavy topics as poverty, violence, drugs, infidelity, teenage pregnancy, homophobia, rape, mutilation and murder.  (SUMF ¶52; Book, *passim*).  Although Langston attains success and there are glimmers of hope throughout the Book – that he and the people closest to him will be able to escape the dark world in which they live – the Book is punctuated with sickening, violent and terrifying events.  *Id*.

---

[11]     Moreover, one of the important themes in the Book is racial and socio-economic inequality (*i.e.*, Langston's mother teaches him what to do if he is stopped by the police, Langston notices that Tori's disappearance garners far less media attention than the disappearances of "suburban girls", and so on).  Contrary to Plaintiff's expert's assertion, this pervasive theme in the Book is entirely absent from the Picture, with the exception of one off-hand remark by Kevin that the lottery is "designed to keep poor people poor," which is used exclusively as a device to show Kevin's initial skepticism in playing the lottery.  (SUMF ¶50; Book, at pgs. 21, 63 and 114; Picture 10:31-10:33).

On the contrary, the Picture is a light "feel-good" comedy.  Intended to amuse and induce laughter at every turn, it steers clear of topics which could possibly be construed as "heavy" or "serious."  The subtext of poverty typically associated with life in a housing project is dealt with on the most superficial level, in the way that comedies are able to do, and is barely felt throughout the Picture.  Even the antagonists, Lorenzo and Sweet Tee, can only be perceived as funny rather than frightening.  (SUMF ¶53; Picture, *passim*; Plt's Depo., 147:16-25).

The moods of the two works could not be further apart on the spectrum.

### 3.  Characterization

The two works also differ significantly in terms of characterization.[12]  While both protagonists, Kevin and Langston are young African-American men who live in the projects with a single parental figure,[13] the two characters are quite distinct in virtually every other respect.  Langston works extremely hard at perfecting his skill as a basketball player and, rather than go to college, makes the decision to

---

[12]     "Copyright law provides very limited protection to the characters presented in a creative work.  Basic character types are not copyrightable." *Jones v. CBS, Inc*., 733 F. Supp. 748, 753 (S.D.N.Y. 1990); *See also Olson v. NBC*, 855 F.2d 1446, 1451-52 (9th Cir. 1988) (copyright protection only extends to those characters which are "especially distinctive.")

[13]     In the Book, Langston's father is alive but they have no relationship because Langston's father is involved in a homosexual relationship.  In the Picture, Kevin lives with his grandmother and no mention is made of his parents. (SUMF ¶55; Plt's Depo., 151:7-22).

pursue a professional basketball career overseas. Kevin, on the other hand, works at Foot Locker and has unpursued dreams of designing athletic shoes. (SUMF ¶55; Book, *passim;* Picture, *passim* and 0:30-1:12; 3:18-3:31, 38:00-38:10).

Despite filling certain archetypal roles, the remaining supporting characters in the two works equally lack substantial similarity. Jalen and Benny, the "best-friend" characters, are quite different from one another. Jalen is a risk-taker, a liability to Langston, and can be both rash and overly-aggressive. Benny, on the other hand, remains level-headed in spite of Kevin's new-found wealth, and his only purpose seems to be to amuse, protect and inspire Kevin. (SUMF ¶56; Book, *passim*; Picture, *passim*).

Similarly, "love interests" Tori and Stacie are quite different from one another. Tori is Langston's long-term girlfriend, who is a virgin until she is brutally gang-raped. Stacie is just a close friend of Kevin's, until the latter part of the Picture when their relationship turns romantic. (SUMF ¶57; Book, p. 4, Picture, *passim* and 1:09:09-1:12:58).

The characterization of antagonists, Toy and Lorenzo, also differs substantially. Toy is savvy, conniving and extremely dangerous. Not only does he blackmail Langston into signing a three-year contract with him, but he also orchestrates a kidnapping and gang-rape of Tori, Langston's fiancé, and brutally

mutilates and kills Langston's best friend Jalen.  Lorenzo, on the other hand, is a comedic ex-con neighborhood bully who gets Kevin fired from work and later steals his winning lottery ticket.  (SUMF ¶58; Book, at pgs. 65-66, 77, 94,148-152; Picture, at 17:02-19:50, 1:02:23-1:05-55, 1:13:45-1:14:00).

Finally, other than filling the stereotypical roles of the sexy, promiscuous women, Katrina and Nikki are substantially different characters.  For example, Katrina is clearly interested in Langston for more than just his success, as the two have long-since been involved in a physical relationship, and she is legitimately upset when she discovers that Langston and Tori are engaged.  In contrast, Nikki is clearly just a "gold digger", who rejects Kevin until she learns that he has won the lottery.  (SUMF ¶59; Book, 14-19, 49, 51, 55-57, 110, 114, 116-118, 121-122, 131, 133-134, 143, 151-152, 164; Picture, at 6:38-12:46, 38:26-39:40; 47:25-48:00; 49:14-51:53).

### 4.  Pace

The two works also differ in terms of the pace.  The Picture continuously follows Kevin over the course of a single three-day holiday weekend, and then fast-forwards to one brief scene three months later.  (SUMF ¶61; Picture *passim).*  In contrast, while it is difficult to gauge the precise amount of time that the Book spans, the story is told sporadically from the time that Langston prepares to

graduate high school and through when he must avenge the kidnapping and gang-rape of his fiancé and brutal mutilation and murder of his best friend, before embarking on his professional basketball career.  It would appear to take place over the course of several months.  (SUMF ¶61; Book, *passim).*  The pace of the Book is therefore multiple times the pace of the Picture.  *See Herzog, supra,* 193 F.3d at 1260 (holding that where both works took place within a few days, the pace of one was "rapid and tense" whereas the pace of the other was "slow and stately" such that they were not substantially similar); *See also Beal*, *supra,* 20 F.3d at 463 (holding that where the plaintiff's work spanned nine months and the defendant's work spanned forty days, the two works were not substantially similar enough to weigh in plaintiff's favor).

### 5.  Setting

Both the Book and the Picture are set in housing projects[14].  However, that broad similarity is certainly not original to Plaintiff, or subject to copyright protection.  *See e.g., Jackson v. Booker*, 465 Fed. Appx. 163, 164 (3rd Cir. 2012) ("[Plaintiff's work] tells a story about five teenagers from a hard-life big town

---

[14]     The protagonist in the Book lives in Pointdexter Village, or The Vil, a housing project located near Cincinnati, Ohio.  In the Picture, it is never revealed where exactly the Fillmore Housing project is located, although the Picture was filmed in Atlanta, Georgia. (SUMF ¶63; Book, *passim*; Picture, *passim*; Plt's Depo., 168:5-16).

housing project.")  Beyond that, the two housing projects are depicted differently. In the Book, the Vil is depicted as a crime-ridden, gritty, depressing and violent place.  (SUMF ¶63; Book, *passim*).  The Fillmore Housing project in the Picture, on the other hand, is a tight-knit community, with a neighborly-feel, without the byproducts of poverty stereotypically associated with life in the inner-city.  (SUMF ¶63; Picture, *passim*).

Additionally, in spite of Plaintiff's contention that a "basketball court" is a focus of both works, Plaintiff has no property right in the idea and real-life commonality of a basketball court in a housing project.  Moreover, Plaintiff completely mischaracterizes the relative weight of the basketball court in each work.  The basketball court is the true focus of the Book.  Langston played and honed his skills there while growing up, continues to train there as he prepares to play basketball professionally and eventually donates a new basketball court to the community.  (SUMF ¶86; Book, *passim*).  By contrast, the basketball court in the Picture is merely physically located within the housing project.  (SUMF ¶86; Picture, *passim* [seldom appears]).  However, neither Kevin nor any other main characters in the Picture are ever portrayed playing basketball.  *Id*.

### 6.  Dialogue

None of the dialogue from the Book appears in the Picture.  (SUMF ¶114;

Book and Picture, *passim*).  Nonetheless, Plaintiff asserts that the Book and Picture are similar because both works use such well- known colloquial terms as "gees", slang for "grand" meaning "thousands of dollars," and "chill", meaning "relax". (SUMF ¶114; Comparison Chart by Plaintiff and Plaintiff's Expert, p. 6; http://www.thefreedictionary.com/chill and SUMF ¶125; Plaintiff's Expert Report ("Plt's Exp. Rpt"), p. 10; http://www.thefreedictionary.com/gees).  However, "[o]rdinary phrases are not entitled to copyright protection."  *Narell v. Freeman*, 872 F. 2d 907, 911 (9th. Cir. 1989) *citing Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F. 2d 705, 711 (7th Cir. 1962).  The use of commonplace slang terms does not constitute protectable expression and is inconsequential.

Moreover, Plaintiff's contends that the two works are similar because in the Book, Jalen gets his leg cut off[15], and in the Picture, when Kevin hypothetically asks the loan shark, Sweet Tee, what he would do if someone who borrowed money from him could not repay it, Sweet Tee comically replies that he would saw that man's legs off at the knees, grind them into hamburger meat and feed them to his dogs.  (SUMF ¶133; Book, at pg. 148; Picture at 1:20:48-1:21:18).  However, despite Plaintiff's attempt to liken a gruesome mutilation in the Book which eventually leads to the death of the protagonist's best-friend, to dialogue in the

---

[15]     Indeed, Jalen gets both his left leg and his right arm cut-off in the Book.

Picture which is distinctly comedic and maintains the Picture's overall light tone, there is clearly no similarity whatsoever between either of these episodes or the manner in which they are expressed. *Id.*

Accordingly, as a review of both works conclusively demonstrates, the plot, mood, characterization, pace, setting, dialogue, theme and sequence of events are substantially *dissimilar*, such that no reasonable jury could possibly find that the two works are substantially similar.

## C. <u>The Alleged Points of Correspondence Concern Only Noncopyrightable Elements.</u>

Recognizing that the two stories are completely different, Plaintiff and his expert[16] have set forth a laundry list of purported points of correspondence that reflect no more than mischaracterizations, broad ideas, *scenes-a-faire,* generalizations and random unprotected similarities scattered throughout the two

---

[16]    "Substantial similarity exists where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Original Appalachian Artwork v. Toy Loft, Inc.*, 684 F. 2d 821, 829 (11th Cir. 1982) (citations omitted).  "Because the test is intended to gauge the reaction of an 'average lay observer' the testimony of expert witnesses plays, at most, a minor role in determining substantial similarity." *Currin v. Arista Records, Inc.*, 724 F. Supp. 2d 286, 290 (D. Conn. 2010). Thus, the opinion of Plaintiff's expert should be given minimal weight.  Moreover, in light of this standard, Defendants have only retained a researcher to assist in providing examples of prior works relating to a representative sampling from Plaintiff's expert's report.  Such examples demonstrate that the strained points of correspondence identified by Plaintiff's expert appear in dissimilar works and/or in real life, and do not constitute protectable expression. *Beal, supra,* 20 F.3d at 460.

works.  However, as explained in *Beal*, "such lists are inherently subjective and unreliable, particularly where the list contains random similarities . . .  which could be found in very dissimilar works."  20 F.3d at 460 (citations omitted); *See also Herzog, supra,* 193 F.3d at 1257, *citing Williams v. Crichton*, 84 F.3d 581, 590 (2nd Cir. 1996) ("[L]ists of random similarities held not to be probative of substantial similarity because such lists fail 'to address the underlying issue of whether a lay observer would view the works as a whole substantially similar to one another.'").

Moreover, as discussed above, it is well established that even shared general themes are not protected.  *E.g., Beal*, *supra,* 20 F.3d at 460 (generalized themes are not protected); *see also Funky Films, supra,* 462 F.3d at 1079 (finding that "[a]lthough both works explore themes of death, relationships, and sex, they do so in very different ways").

And, notably, the vast majority of the alleged points of correspondence identified in the lists prepared by Plaintiff and his expert appeared in a draft screenplay of the Picture which was completed ***before*** Plaintiff allegedly submitted the Book to Defendant Cube Vision, Inc. (SUMF, *passim*).  None of those so-called "similarities" can serve as the basis for Plaintiff's claim for this reason alone.

Nonetheless, each of the points of correspondence are addressed in the SUMF.  In addition to the examples discussed in section III.B, *supra,* what follows are a few additional illustrative examples of mere ideas, *scenes a faire,* commonplace story elements, and other generalized and/or inaccurate purported similarities contained in Plaintiff's expert's report:

- In the Book, the characters are getting ready to graduate, whereas in the Picture, the characters have just graduated → Countless very dissimilar works are set during these different transitional periods when characters have recently graduated or about to graduate high school, and indeed such works constitute an entire genre known as the coming-of-age story. (SUMF ¶91; Plt's Exp. Rpt, p.8; Declaration of Ellen Baskin ("Baskin Decl.") ¶5).[17]

- In the Book, Langston grew up with his single mother; in the Picture, Kevin lives with his single grandmother → Putting aside that these are different scenarios, the concept of living with a single female adult is, unfortunately, reflective of a disturbing realism impacting many underprivileged communities and is depicted in many motion pictures. (SUMF ¶69; Plt's Exp. Rpt, p. 6; Baskin Decl., ¶7).

---

[17]    The Declaration of Ellen Baskin is attached hereto as Exhibit "H".

- In the Book, Langston gets a chance to design sneakers, and in the Picture, Kevin wants to design sneakers → Plaintiff mischaracterizes this as a point of correspondence.  In the Picture, Kevin dreams of *designing* sneakers; whereas, in the Book, Langston states that he is "going to sign a seventeen-million-dollar shoe *endorsement* contract."  (SUMF ¶88; Plt's Exp. Rpt, p. 8; Plt's Depo., 152:6-15; Book, at p. 79; Picture, at 0:30-1:12; 3:18-3:31; 38:00-38:10).

- In the Book, Langston dedicates a basketball court as a place for kids in the community and in the Picture, Kevin donates a basketball court and park to the community →  The notion of "giving back" to the community when one attains success, is a broad generalized concept in a rags-to-riches story and frequently occurs in reality.[18]  (SUMF ¶137; Plt's Exp. Rpt, p. 11; Book, at p.159-160; Picture, at 131:24-132:50; Baskin Decl., ¶8).

- In the Book, Tori and Katrina do not like each other and in the Picture, Stacie and Nikki do not like each other → In addition to

---

[18]    "In addition to broad ideas, noncopyrightable material includes 'scenes a faire' --- stock scenes that naturally flow from a common theme."  *Beal, supra,* 20 F.3d at 459*, citing Walker, supra,* 784 F.2d 44, 50 ("no protection for common elements in police fiction, such as 'drunks, prostitutes, vermin and derelict cars' and 'foot chases and the moral problems of policemen, not to mention the familiar figure of the Irish cop.'")

mischaracterizing the interactions between these characters, the concept

of a rivalry between a female protagonist and a female antagonist

competing for the same man is a broad unprotectable idea and a

commonplace literary device utilized in countless stories for centuries.

(SUMF ¶118; Plt's Exp. Rpt, p. 9; Book, *passim*; Picture, *passim*)[19]

Summary judgment has been granted in cases with significant similarities,

which are utterly absent in this case.  *See e.g., Beal, supra*, 20 F.2d at 454 (11th Cir.

1994) (insufficient similarity where both works involved "young crown princes

from wealth royal families coming to America, where they meet the women they

will marry"); *Berkic, supra*, 761 F. 2d at 1293 (insufficient similarity where

"[b]oth [works] deal with criminal organizations that murder healthy young people,

then remove and sell their vital organs to wealthy people in need of organ

transplants"); *Walker, supra*, 784 F. 2d 44, 49 (insufficient similarity where "[b]oth

---

[19]     Indeed, in addition to the above examples, Plaintiff and his expert's so-called list of similarities include such banal concepts as: the rivalling woman wear dresses (SUMF ¶95; Plt's Exp. Rpt, p. 8; Book, at p. 16; Picture, at 11:20-12:10); the protagonist and other characters do not like the antagonist (SUMF ¶82; Plt's Expt. Rpt, p. 7; http://www.merriam-webster.com/dictionary/antagonist; and SUMF ¶84; Plt's Expt. Rpt, p. 7; Plt's Depo., 154:8-20; http://www.merriam-webster.com/dictionary/antagonist); people gather at Kevin's grandmother's house after she tells one person about Kevin winning the lottery, and people call after Langston's mother tells a few people that he's been drafted to play basketball (SUMF ¶100; Plt's Exp. Rpt, p. 8; Book, at p. 32; Picture, at 32:28-32:48); there is a graduation party in the Book and there are parties in the Picture (SUMF ¶112; Plt's Exp. Rpt, p. 9; Plt's Depo., 141:16-142:5; Book, at p. 54; Picture, at 1:23:58), and so on.

[works] recount the experiences of policemen battling the hostile environment of the 41st Precinct."); *Williams, supra,* 84 F.3d 581, 590 (insufficient similarity where characters in both works "escape deadly, pack-hunting dinosaurs … when another dinosaur … intervenes"); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042 (9th Cir. 1994) (insufficient similarity where both screenplays featured individuals using scientific methods which shrink people to miniscule proportions).

Here, a review of the points of correspondence asserted by Plaintiff easily reveals that the two works are substantially different and that none of the random, generalized so-called similarities listed in Plaintiff's expert's report could conceivably give rise to a claim for infringement. *Beal, supra*, 20 F.3d at 460; *see also Williams, supra* 84 F.3d at 590 ("scattershot approach" of listing random similarities cannot support a finding of substantial similarity).

## IV.   <u>CONCLUSION.</u>

For all of the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion for summary judgment. The Complaint should be dismissed and this Court should reserve jurisdiction to award Defendants' their attorneys' fees and costs incurred in defending this action. *Fogerty v. Fantasy, Inc.* 510 U.S. 517 (1994).

DATED this 16th day of April, 2014.

Respectfully submitted,

THOMPSON HINE LLP

BY:   /s/ Gary S. Freed
      Gary S. Freed (SBN 275275)
      Gary.Freed@thompsonhine.com

      Two Alliance Center
      3560 Lenox Road, Suite 1600
      Atlanta, Georgia 30326-4266
      Phone:  (404) 541-2900
      Fax:      (404) 541-2905

BY:   /s/ Gerald L. Sauer
      Gerald L. Sauer (Cal. Bar No. 113564)
      gsauer@swattys.com
      Anthony D. Sbardellati (Cal. Bar No.
      246431)
      asbardellati@swattys.com
      SAUER & WAGNER LLP
      1801 Century Park East, Suite 1150
      Los Angeles, CA 90067
      Telephone (310) 712-8100
      Facsimile (310) 712-8108

      **Attorneys for Defendants**
      Alcon Entertainment, LLC, Alcon Film
      Fund, LLC, Warner Bros. Pictures, Cube
      Vision, Inc. and Time Warner Inc.
      erroneously sued herein as Time Warner,
      Inc.

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

Pursuant to Local Rule 7.1(D), counsel hereby certifies that this document has been prepared using Times New Roman 14 point font, as approved by Local Rule 5.1(C).

Dated this 16th day of April, 2014.

/s/ Gary S. Freed
Gary S. Freed (SBN 275275)
Gary.Freed@thompsonhine.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have, this date, filed electronically the foregoing

**DEFENDANTS ALCON FILM FUND, LLC, ALCON ENTERTAINMENT,**

**LLC, CUBE VISION, INC., WARNER BROS. PICTURES, AND TIME**

**WARNER INC.'S BRIEF IN SUPPORT OF THEIR MOTION FOR**

**SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF

system, which will automatically send email notification to the following attorneys

of record:

Alan S. Clarke, Esq.
The Entertainment Law Gorup
Alan S. Clarke & Associates, LLC
3355 Lenox Road
Suite 750
Atlanta, Georgia 30326

Dated this 16th day of April, 2014.

/s/ Gary S. Freed
Gary S. Freed (SBN 275275)
Gary.Freed@thompsonhine.com
